The PEOPLE of the State of Colorado, Complainant,

v.

William J. CONVERY, Attorney–Respondent.

No. 87SA445.

Supreme Court of Colorado, En Banc.

May 9, 1988.

Linda S. Donnelly, Disciplinary Prosecutor, Denver, for complainant.

---

Douglas G. McKinnon, Denver, for attorney-respondent.

VOLLACK, Justice.

In this disciplinary proceeding, a Hearing Panel of the Supreme Court Grievance Committee (panel) has recommended that the respondent-attorney, William J. Convery (Convery or the respondent), be suspended from the practice of law for six months and assessed the costs of these proceedings. We decline to accept this recommendation, and order the respondent suspended for one year and one day. We further order that the costs of these proceedings be assessed against him.

I.

The respondent, William J. Convery, was admitted to the bar of the Supreme Court of the State of Colorado in 1979 and is registered upon the official records of this Court, Registration Number 9385. He is subject to the jurisdiction of this Court and its Grievance Committee in these disciplinary proceedings.

This disciplinary action arose from the respondent's dealings with his clients Alex and Norma Anderson. The respondent and the disciplinary prosecutor entered into a Stipulation of Facts which established the following conduct. Alex Anderson, the complainant, owned ninety percent of Energy Associated Products, Inc. (Energy Associated). In 1978, Anderson signed a promissory note on behalf of Energy Associated for a loan of approximately $125,000 from Western National Bank (the bank). In January 1979, Anderson entered into an agreement with D. Powelson to sell his Energy Associated stock to Powelson. Anderson alleges that prior to his agreement with Powelson, the bank had agreed to cancel the $125,000 note in exchange for the receipt of new notes from Anderson and Powelson for $50,000 and $75,000, respectively. Instead, the bank suggested and it was agreed at closing that the bank would assist Powelson in obtaining a Small Business Administration loan with which to pay the note. However, by June the bank had not obtained the SBA loan. Powelson lost interest and the deal "fell through."

Because the sale was not completed, Anderson had to renew the entire note in June 1979 when it came due. He renewed the note on behalf of Energy Associated, personally guaranteed by him and due and payable in June 1984. Several months later the bank realized that it had not included the interest accumulated on the original 1978 note when it calculated the 1979 renewal note. The bank requested that Anderson sign and personally guarantee a second note, due in April 1980, for the unpaid interest of $8,937.67 on the original note.

In August 1980, Anderson retained counsel and suit was filed against the bank. Anderson claimed that the bank had breached its agreement to permit Powelson to assume $75,000 of the loan, and he sought actual damages of $75,000 plus the interest accrued on the $125,000 loan. The bank counterclaimed, alleging that the payments on the original $125,000 note were in default and seeking to recover the amount of the unpaid balance plus interest and attorney fees. In September 1981 the bank obtained a $118,008.45 judgment against Anderson on its Motion for Partial Summary Judgment. In an effort to satisfy the judgment, the bank filed foreclosure proceedings against Anderson's home. Anderson obtained another loan and redeemed his property by paying the bank approximately $135,000.

In the meantime, in June of 1981 the bank filed a second counterclaim alleging that the second note for $8,937.67 was in default, and seeking a judgment for that amount plus interest and attorney fees. Anderson's defense was that he had signed the note in blank, and that when the bank completed the form it had added terms not authorized by him. Anderson's claims in the original action and his claims regarding the second note and counterclaim were scheduled for trial in July 1983.

A pretrial conference was scheduled on June 13, 1983; Anderson's attorney did not attend and did not submit a pretrial data certificate. Two days later, the judge or-

dered the complaint dismissed with prejudice and entered judgment in favor of the bank, against Anderson.

Shortly thereafter, Anderson retained the respondent to represent him and paid Convery $500. Convery told Anderson that he would handle the matter and entered a Substitution of Counsel and Motion to Set Aside the Default Judgment. However, the respondent never set the motion for hearing, and he did not file a Motion for Stay of Execution or post a bond under C.R.C.P. 62. As a result, Anderson's bank account was garnished in September 1983 ·for approximately $7,000. When Anderson notified Convery of the garnishment, Convery assured his client that he would take action.

At this point, a balance of $13,000 remained outstanding on the bank's judgment against Anderson, and the bank brought levy and execution proceedings against rental property owned by Anderson and his wife. In February 1984, the respondent filed three documents: a forthwith motion requesting that the sheriff be prohibited from selling the rental property, a motion to stay execution of the sale, and a notice to set the motions for hearing. The motions were not heard by the court and the sale was held in late February 1984. In July of 1984 the respondent filed a Motion to Set Aside the Foreclosure and Sheriff's Deed; the motion was denied as being frivolous and groundless.

The rental property which was the subject of the levy and execution proceedings was a duplex owned one-half by Alex Anderson and one-half by his wife, Norma Anderson. Since the bank now owned Mr. Anderson's half of the duplex, it filed suit against Mrs. Anderson requesting that the court order the duplex sold and the proceeds divided between Mrs. Anderson and the bank. The bank's attorneys sent notice to Convery scheduling a date to take Mrs. Anderson's deposition; neither Convery nor his client appeared on the scheduled deposition date. Mrs. Anderson stated that Convery had not informed her of the date. Due to her failure to appear, the court ordered sale of the property and later imposed sanctions against her. Her answer in the case was stricken and judgment was entered for the bank. In February 1986 the proceeds of the sale were distributed to the bank as follows: reimbursement for the sale cost and commissioner's fee ($536.88), attorney fees, costs, rents and interest ($13,257.05), and the remainder as the bank's half share of the sale proceeds ($20,000).

In the meantime, the bank served interrogatories on Anderson in February 1985 concerning his assets. The respondent agreed to take care of the interrogatories for Anderson but did not do so. No response was filed and a contempt citation was issued in April 1985 for Anderson's failure to respond.

One month later, the respondent was suspended by this court for one year and one day as the result of misconduct unrelated to the case presently before the court. *See People v. Convery*, 704 P.2d 296 (Colo.1985). The respondent withdrew from his representation of Mr. and Mrs. Anderson. Mr. Anderson brought this matter to the attention of the Supreme Court Grievance Committee.

## II.

The disciplinary prosecutor and Convery agreed by stipulation that Convery's conduct was in violation of C.R.C.P. 241.6 (discipline of attorneys), DR 1–102(A)(1) (violation of a disciplinary rule), DR 6–101(A)(2) and (A)(3) (handling a legal matter without adequate preparation; neglect of legal matter entrusted to him), and DR 7–101(A)(2) and (A)(3) (intentional failure to carry out a contract of employment with a client for professional services; prejudice or damage to a client during the course of a professional relationship). In this stipulation, the respondent admitted the assertions set forth in the complaint. A hearing was held before a hearing board of the Supreme Court Grievance Committee. The hearing board considered the respondent's evidence offered in mitigation. In May 1985 Convery was suspended for one year and one day, but he has not yet sought reinstatement from that suspension. Convery ad-

mitted that the conduct which gave rise to the complaint before us was the direct result of his alcoholism. The hearing board noted that the respondent has taken positive steps to control his alcoholism, has worked with a psychiatrist, and has been an active member of Alcoholics Anonymous since late 1984.

At the hearing, the prosecution asked the board to recommend disbarment. The board declined, and instead recommended that Convery be suspended for two years, be required to file a petition for reinstatement pursuant to C.R.C.P. 241.22(c), be required to undergo reinstatement proceedings as set forth in C.R.C.P. 241.22(d), and be required to meet certain conditions before he can be reinstated.[1] The board also recommended the assessment of costs against the respondent.

A majority of the hearing panel approved the board's findings but rejected the board's recommendation and instead recommended a six-month suspension, with two panel members dissenting. The panel based its recommendation on the fact that the respondent was still under the 1985 suspension and was already required to seek reinstatement for that suspension, the respondent has made significant progress toward rehabilitation, and the board believed that another lengthy suspension was not likely to provide additional protection to the public. The panel also recommended the assessment of costs against the respondent.

The prosecutor has filed exceptions and an opening brief in this court, asserting that the respondent's clients suffered seri-

ous injury as a result of his conduct.[2] The prosecutor asks us to consider these factors: Convery engaged in a pattern of neglect, he did not and cannot make restitution, he did not have malpractice insurance, and he is the subject of a prior suspension. For these reasons, the disciplinary prosecutor asks us to reject the hearing panel's recommendation of a six month suspension and order the respondent disbarred.

Section 4.41 of the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) provides:

4.41 Disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

Section 4.42 states:

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Based on the facts before us, we decline to order disbarment. Mitigating factors[3]

---

1. The board recommended that as conditions of reinstatement, the respondent be required to obtain malpractice insurance, submit proof of rehabilitation, and continue to participate in Alcoholics Anonymous or an equivalent program.

2. The hearing board apparently concluded that the disciplinary prosecutor had not proven that Convery's conduct resulted in serious damage to his client.

3. The following are mitigating factors, which "may justify a reduction in the degree of discipline to be imposed":

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical or mental disability or impairment;
(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;

in this case include the respondent's progress in rehabilitation and the fact that he is currently under suspension because he has not applied for reinstatement since his first suspension. *See* ABA Standard 9.32(h), (k).

We also reject the panel's recommendation of a six month suspension. Because several aggravating factors are present, we believe that the respondent's conduct calls for a suspension of longer than six months. As aggravating factors,[4] we note the respondent's prior disciplinary proceedings, his pattern of neglect, and the damage suffered by his clients as a result of Convery's neglect. *See* ABA Standard 9.22(a), (c).

We recognize the mitigating value of an attorney's obtaining professional help in order to deal with a substance abuse problem. *See People v. Driscoll,* 716 P.2d 1086, 1088 (Colo.1986). We also believe that the conditions which the respondent must meet if and when he seeks reinstatement serve to adequately protect the public from the possibility of further misconduct due to Convery's alcoholism. It appears from the documents before us that the respondent has acknowledged his problem with alcohol abuse. Testimony at the hearing established that Convery has been and is actively addressing his alcohol problem. We therefore conclude that the appropriate disciplinary action is suspension for one year and one day.

We order that the respondent be suspended for one year and one day from the date of this opinion. The respondent is also ordered to pay the costs of these proceedings in the amount of $113.76 to the Supreme Court Grievance Committee, 600 17th Street, Suite 500S, Denver, Colorado 80202, within thirty days from the date of the announcement of this opinion.

---

    (*l*) remorse;
    (m) remoteness of prior offenses.
  § 9.31–.32.

**4.** Aggravating factors which "may justify an increase in the degree of discipline to be imposed" are described as follows:

    9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
      (a) prior disciplinary offenses;
      (b) dishonest or selfish motive;
      (c) a pattern of misconduct;
      (d) multiple offenses;
      (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
      (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
      (g) refusal to acknowledge wrongful nature of conduct;
      (h) vulnerability of victim;
      (i) substantial experience in the practice of law;
      (j) indifference to making restitution.
  § 9.21–.22.