**In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: John J. SULLIVAN, Jr. Petitioner.**

No. 116, 2002.

Supreme Court of Delaware.

Submitted: May 7, 2002.
Decided: June 27, 2002.

Bruce A. Rogers, Esquire, Georgetown, Delaware, for Petitioner.

33. *Id.*

Andrea L. Rocanelli, Esquire, Wilmington, Delaware, for the Office of Disciplinary Counsel.

Before VEASEY, Chief Justice, WALSH, and BERGER, Justices.

PER CURIAM.

The petitioner, John J. Sullivan, Jr., has filed an application for reinstatement to active practice as a Delaware lawyer. This Court had suspended Sullivan from the practice of law for a period of eighteen months beginning September 1, 1998 for numerous violations of the Delaware Lawyers' Rules of Professional Conduct (DLRPC), including making false statements to clients, failing to act with diligence, and failing to provide competent representation.[1] Sullivan filed his petition for reinstatement with the Board on Professional Responsibility on September 26, 2001.

After a hearing on December 10, 2001, a Panel of the Board (the Panel) issued a report, dated March 6, 2002, recommending that Sullivan be reinstated to active practice, subject to a three year period of public probation with conditions. The Panel adopted all of the probationary conditions recommended by the Office of Disciplinary Counsel (ODC) except for two. The Panel specifically rejected the ODC's recommendations that (i) Sullivan make a formal offer for repayment of a $76,000 debt to a client, which previously had been discharged in bankruptcy; and (ii) Sullivan be required to carry malpractice insurance. Sullivan raised no objections to the Panel's Report. The ODC filed objections to the Panel's Report with respect to the two probationary conditions that the Panel rejected.

### Reinstatement Hearing

Pursuant to DLRPC Rule 22, a lawyer petitioning for reinstatement to active practice after a suspension in excess of six months must be able to demonstrate to the Board, by clear and convincing evidence, the lawyer's professional rehabilitation and current professional competence.[2] In support of his petition, Sullivan presented the testimony of several witnesses.

Dr. Carol Tavani testified before the Panel that she first met Sullivan in 1997 when he was referred to her by Victor Battaglia, Esquire, in his role as a member of the Professional Guidance Committee. Dr. Tavani diagnosed Sullivan as suffering from profound major depression and anxiety disorder with severe phobia. Dr. Tavani stated that Sullivan has continued to treat with her and has made excellent progress. She testified that, although Sullivan will need to continue taking medication indefinitely to treat his disorders, he is fully able to return to the practice of law. She opined that Sullivan presents a very low risk for recidivism and that he does not represent a danger to the public.

Dr. Neal Shore, who testified on behalf of the ODC, concurred with Dr. Tavani's diagnosis. Dr. Shore also stated that, as long as Sullivan continues to remain in active treatment, a recurrence of his pro-

---

1. *In re Sullivan,* 727 A.2d 832 (Del.1999).

2. DEL. L.R. PROF. RESPONSIBILITY 22(g) (2002). Rule 22(g) provides, in part, that the petitioning lawyer must demonstrate: (1) professional rehabilitation, including rehabilitation from any drug or alcohol problem; (2) compliance with all applicable disciplinary orders, including restitution orders; (3) fitness to practice; (4) overall competence and current awareness of developments in the law; (5) no professional misconduct since the suspension; (6) recognition of the wrongfulness of the prior misconduct; (7) honesty and professional integrity; and (8) resumption of the lawyer's practice of law will not be detrimental to the administration of justice.

fessional misconduct was unlikely. In sum, Dr. Shore opined that Sullivan "is currently able and fit to return to the practice of law."

Sullivan testified on his own behalf. He testified about the misconduct that had led to his eighteen month suspension and his subsequent treatment for the depression and anxiety that had precipitated the misconduct. He acknowledged that three of the seven client matters that had resulted in his suspension had also resulted in malpractice claims against him. While two of those matters remain in litigation, one matter, involving a client named Robert Smith, had been settled and had resulted in a judgment against Sullivan for $76,000. One of the conditions of the settlement was that Smith's judgment would not be dischargeable in bankruptcy. Notwithstanding this agreement, Sullivan testified that, upon the advice of counsel, he listed Smith's obligation as a dischargeable debt in his bankruptcy petition. Ultimately, the $76,000 obligation was compromised to $25,000. Sullivan testified that he feels a moral obligation to Smith to repay the full $76,000, although he cannot afford to do it at this time.

The final witness to testify was Joseph Wahl, Esquire. Wahl testified that his law practice is limited to domestic relations. Sullivan has been working in his office as a paralegal since 1999. Wahl testified that Sullivan's work product is outstanding, and he intends to expand Sullivan's duties incrementally if Sullivan is reinstated. Wahl stated that he would be willing to act in the capacity of Sullivan's practice monitor. Wahl testified that he does not maintain malpractice insurance but that his personal assets are significant enough to cover any successful malpractice claim against his firm.

### Panel's Findings and Recommendation

After considering all of the testimony, the Panel found that Sullivan had proven his rehabilitation and his current professional competence by clear and convincing evidence and concluded that Sullivan should be reinstated, subject to a three year period of probation upon reinstatement. The Panel then considered the conditions for Sullivan's probation, which were proposed by the ODC. Sullivan consented to all of the conditions but the following two: (i) that he be required to make a formal offer of payment to Mr. Smith for the $76,000 debt; and (ii) that he be required to carry malpractice insurance in limits to be approved by the ODC. After careful consideration, the Panel rejected the two disputed conditions, stating:

The Panel did not agree with two conditions offered by the ODC. The first condition is that Petitioner be required to contact Mr. Smith and to make a formal offer for repayment of $76,000.00. The Panel was concerned that Petitioner was already discharged of this obligation by a court of competent jurisdiction. The Panel was also impressed with Petitioner's sworn statement during the proceeding that he treats this as a moral obligation and intends to make complete payment to Mr. Smith. Likewise, the Panel did not adopt the requirement that Petitioner be required to carry malpractice insurance. Petitioner, by the terms of his probation, is prohibited from engaging in the solo practice of law. His current employer, Mr. Wahl, has indicated under oath and as an officer of the Court and member of the Delaware Bar that he would intend to make good any client wronged with his personal assets. While the panel recognizes that the Court imposed such an obligation in the matter of *In re Solomon*, it appears that the Court required Respondent in that action "to continue

to carry malpractice insurance commensurate with her current coverage." *In re Solomon,* Del.Supr., 745 A.2d [874,] 892 (1999).

### ODC's Objections

The ODC filed objections to the Panel's Report limited to the Panel's rejection of the two disputed probationary conditions. The ODC argues that the primary purpose of the disciplinary system is to protect the public. Given Sullivan's history of prior misconduct, which resulted in three malpractice actions and Sullivan's suspension from the practice of law for eighteen months, the ODC argues that malpractice insurance is necessary because it is the only effective method to protect the public in the event of Sullivan's future malpractice.

The ODC points out that this Court, albeit in a different context, has required a lawyer to carry malpractice insurance as a condition of disciplinary probation.[3] Furthermore, given Sullivan's own financial situation and his apparent inability to cover any future legal malpractice claims with his own resources,[4] the ODC argues that it is necessary for Sullivan's employer to have sufficient malpractice insurance to cover any successful claims of malpractice by Sullivan.

The ODC asserts, and Sullivan conceded at the hearing, that his former clients would have had no recourse for his previous misconduct if his former employer had not had malpractice insurance. Sullivan's current employer does not maintain malpractice insurance, and the ODC argues that his current employer's representa-

tions about his ability to satisfy any malpractice judgment with personal resources are not adequate for two primary reasons. First, there was no evidence at the hearing concerning the extent of the employer's resources in order for the Panel to determine whether those resources indeed were adequate. Second, even assuming the adequacy of the employer's personal resources, Sullivan is not required to remain in his current position. He is free to change employers at any time, which means that his clients may not have adequate malpractice protection from a subsequent employer.

With respect to the second disputed condition, the ODC asserts that Sullivan should be required to make a formal agreement to repay the full $76,000 debt to Mr. Smith as a condition of his reinstatement. The ODC argues that there is precedent for requiring a suspended lawyer, as a condition of reinstatement, to repay debts discharged in bankruptcy.[5] The ODC argues that such a condition is particularly appropriate in Sullivan's case because Sullivan breached his explicit agreement with Mr. Smith that the debt would not be discharged in bankruptcy.

### Reinstatement with Probationary Conditions

■ We have reviewed the Panel's Report and Recommendation carefully, as well as the ODC's objections thereto. We agree with the Panel's factual findings and its recommendation that Sullivan be reinstated as an active member of the Delaware Bar. We also agree with the ODC, however, that Sullivan's reinstatement

---

3. *See In re Solomon,* 745 A.2d 874 (Del.1999) (lawyer who already had malpractice insurance was ordered to continue carrying commensurate coverage during the period of disciplinary probation).

4. The ODC states that two checks Sullivan paid toward the costs of the proceedings were returned for insufficient funds.

5. *See In re Flynn,* Del.Supr., No. 431, 2001, 2001 WL 1175343, Walsh, J. (Sept. 21, 2001).

should be subject to a three year period of probation with *all* of the proposed conditions, including the conditions of malpractice insurance and Sullivan's formal agreement to repay in full the $76,000 debt to Mr. Smith.

■ The primary goal of the lawyer disciplinary system is to protect the public.[6] Although legal malpractice insurance is not mandatory for all members of the Delaware Bar,[7] there is precedent in this jurisdiction[8] and other jurisdictions[9] to require a lawyer, in an appropriate case, to have malpractice insurance.

We commend Sullivan for his efforts at treatment for the issues that precipitated his previous misconduct, and we accept his doctor's opinion that future professional misconduct is unlikely as long as Sullivan remains in active treatment. Nonetheless, we conclude that it would be a breach of our duty to the public if we were to permit a lawyer with Sullivan's history of malpractice to be reinstated as an active member of the Bar without adequate malpractice insurance coverage. Moreover, given Sullivan's earlier agreement that Smith's debt would not be dischargeable in bankruptcy, we find it entirely appropriate to require Sullivan, as a condition of his reinstatement, to acknowledge his debt to Smith in writing and to make appropriate payments toward this debt.

### Conclusion

NOW, THEREFORE, IT IS ORDERED, effective immediately, that Sullivan be REINSTATED as a member of the Bar of this Court subject to a three year probationary period. During his proba-tion, Sullivan shall be subject to the following conditions:

a. Sullivan shall be prohibited from engaging in the solo practice of law.

b. Sullivan shall be directly supervised by a Delaware attorney.

c. Sullivan shall notify his employer of the terms and conditions of his reinstatement.

d. Sullivan shall have a practice monitor approved by the ODC. Sullivan shall meet at least monthly with his practice monitor with whom he shall discuss his work and practice. During the first year of probation, the practice monitor shall report at least monthly to the ODC to advise of Sullivan's compliance with the terms of his probation. During the second and third years of probation, the practice monitor shall report at least quarterly to the ODC to advise of Sullivan's compliance with the terms of his probation.

e. Sullivan shall remain in active psychiatric treatment and remain on medication prescribed by his treating psychiatrist.

f. Sullivan shall authorize the release of reports from his psychiatrist to the ODC documenting (i) the absence of phobic or depressive symptoms; (ii) the absence of any emergence of denial on Sullivan's part of his mental illness; and (iii) compliance with medication.

g. Sullivan shall provide monthly reports directly to the ODC by the treating professionals each month for the first year of the probation and quarterly reports due for the second and third years of probation.

---

**6.** *Cf. In re Hull*, 767 A.2d 197, 201 (Del.2001).

**7.** *But see* OR. REV. STAT. § 9.080 (requiring malpractice insurance for all lawyers licensed in the State of Oregon).

**8.** *See In re Solomon*, 745 A.2d 874 (Del.1999).

**9.** *See, e.g., Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 854 P.2d 280 (1993); *People v. Convery,* 758 P.2d 1338 (Colo.1988).

h. Sullivan shall submit to independent psychiatric examinations, if requested by the ODC. Sullivan shall authorize the release of any psychiatric evaluations directly to ODC.

i. Sullivan shall provide written self-reports to the ODC outlining compliance/non-compliance with the terms of probation. Monthly reports must be provided directly to the ODC each month during the first year of the probation and quarterly reports during the second and third years.

j. Sullivan shall reimburse the outstanding costs of the disciplinary proceedings as determined by the ODC and upon the terms set by the ODC.

k. Sullivan shall contact Robert N. Smith with whom a settlement was reached for a legal malpractice action. Sullivan shall make a formal offer for repayment of $76,000 and make payments toward this debt as negotiated with Mr. Smith.

l. Sullivan shall complete appropriate credit hours of Mandatory Continuing Legal Education on or before December 31, 2002 with a focus in the area of family law.

m. Sullivan shall cooperate fully with the ODC in its efforts to monitor compliance with the probation. Sullivan shall cooperate with the ODC's investigation of any allegations of unprofessional conduct that may come to the attention of the ODC. Upon request of the ODC, Sullivan shall authorize the release of information and documentation to verify compliance with the terms of his probation.

n. Sullivan shall carry malpractice insurance with limits to be approved by the ODC.

o. If the ODC concludes, after giving Sullivan an opportunity to respond, that Sullivan has violated the terms of his probation or had a recurrence of mental illness, the ODC may file a petition directly with this Court requesting that the Court suspend Sullivan on an interim basis or, if appropriate, transfer Sullivan to disability inactive status.